# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

DEBRA KATHLEEN MCLEOD,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　Plaintiff,　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　vs.　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　*　　　　CV 511-080
WAL-MART STORES, INC.;　　　　　*
WAL-MART STORES EAST, L.P.; and　*
WAL-MART ASSOCIATES, INC.,　　　*
　　　　　　　　　　　　　　　　　*
　　　　Defendants.　　　　　　　*

## ORDER

Presently before the Court is the Defendants' Motion for
Summary Judgment, the Plaintiff's Objection to Magistrate Judge
James E. Graham's Order denying the Plaintiff's Motion for
Sanctions, and the Defendants' Objection to Magistrate James E.
Graham's Order granting in part and denying in part the
Defendants' Motion to Exclude the Plaintiff's Expert Witness.
Dkt. Nos. 30, 37, & 53. Upon due consideration, the Defendants'
Motion for Summary Judgment is **GRANTED**, (Dkt. No. 30), the
Plaintiff's Objection to the Magistrate Judge's Order denying
sanctions is **OVERRULED**, (Dkt. No. 37), and the Defendants'
Objection to the Magistrate Judge's Order granting in part and

1

denying in part the Defendants' Motion to Exclude Plaintiff's Expert Witness is **DISMISSED as MOOT**. Dkt. No. 53.

**BACKGROUND**

Plaintiff Debra McLeod filed suit in this Court on August 8, 2011, asserting claims of false arrest, malicious prosecution, and intentional infliction of emotional distress. Dkt. No. 1. The gravamen of Plaintiff's Complaint is that she was wrongfully accused of (and thereafter arrested and indicted for) stealing $2,000.00 from the Wal-Mart where she was employed as an assistant manager. As the Court has been moved by the Defendants for summary judgment, it must construe the facts, to the extent that they are supported by the record, in favor of the Plaintiff. See Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) (noting that at the summary judgment stage the court must determine the relevant set of facts "and draw all inferences in favor of the opposing party 'to the extent supportable by the record.'" quoting Scott v. Harris, 550 U.S. 372, 381 n.8 (2007)). With this in mind, the pertinent background facts are discussed below.

On August 13, 2007, personnel at Wal-Mart Store No. 593, located in Douglas, Georgia reported that a "loan bag" containing $2,000.00 was missing.[1] Dkt. No. 30, Att. No. 1 at ¶

---

[1] A "loan bag" is a bank bag containing currency used by the store to make change or replenish cash registers. Dkt. No. 30-1 at 2. At the beginning of

2.  After learning that the loan bag was missing, the store's manager, Steven Phillips, contacted the store's Asset Protection Coordinator, Selma Lamb, and directed her to investigate the matter by reviewing surveillance footage. Dkt. No. 30, Att. No. 3, Lamb Dep. at 59.  Ms. Lamb and her subordinate, Asset Protection Associate Laura Spivey, proceeded to investigate the matter over the next couple of days.  To do so, Ms. Lamb and Ms. Spivey obtained the Digital Video Recording ("DVR") footage of the Customer Service Podium ("CSM")/tobacco register from August 12, 2007 to determine if the loss could be detected. Id. at 76. The objective of this review was to identify the individuals who had accessed the drawers of the CSM podium on August 12, 2007. Id. at 72.

Ms. Lamb testified that two suspects were established after reviewing the CSM DVR footage. Id. at 77.  One was a non-party, Rachel White, who worked for Wal-Mart as a customer service manager. Id. at 77-78.  Ms. Lamb testified that Ms. White was eliminated as a suspect due to the location at which the loan bag was ultimately found, as Ms. White was never observed entering that particular area. Id. at 80.  The Plaintiff was established as the second suspect due to footage documenting her activities at the CSM podium in the late afternoon of August 12,

each day, two loan bags are signed out by a customer service manager and kept in a locked drawer at the Customer Service Manger ("CSM") podium, located at the store's "tobacco register." Dkt. No. 30, Att. No. 1 at ¶ 2.

AO 72A
(Rev. 8/82)

2007 shortly before her shift ended. Ms. Lamb testified that in reviewing the footage it appeared to her that Plaintiff accessed the drawer and placed something on top of the CSM podium. Id. at 91. Then, according to Ms. Lamb, the Plaintiff turned and retrieved broken-down register boxes (folded cardboard boxes which once held plastic merchandise bags) that were at the end of register eighteen (18). Id. Next, Ms. Lamb opined that Plaintiff turned around and placed the broken-down register boxes on top of the CSM podium, picked them back up, and then proceeded to carry the broken-down boxes to the back of the store where the baler was located. Id. Other video surveillance footage was utilized to track Plaintiff's movement from the CSM podium to the back of the Wal-Mart where the baler was located. There is no surveillance of the baler itself. That is, Plaintiff walked to one of the few areas in Wal-Mart not covered by cameras. At oral argument, however, the parties represented that there was no dispute that the Plaintiff did indeed place the broken-down boxes in the baler.

Ms. Lamb and Ms. Spivey determined that Plaintiff's actions were consistent with someone removing the loan bag from the drawer, placing it inside the stack of broken-down register boxes, and taking the loan bag and boxes to the baler. Ms. Lamb testified that after reviewing this footage she felt that the Plaintiff was a "very strong suspect" in the theft. Id. As is

4

discussed below, Ms. Lamb and Ms. Spivey eventually expressed such sentiments to the police.

In contrast to Ms. Lamb's testimony, Plaintiff offers a differing version of events. Plaintiff acknowledges that she had a key to the drawer containing the loan bag, but denies that she accessed the loan bag drawer on August 12, 2007. Dkt. No. 44 at 3. She avers that she spent time at the CSM podium that day to help out the other CSM's as Mr. Phillips had asked her to "watch over" the front end of the store. Id. at 1-3. Most significantly, Plaintiff maintains that she was in no way responsible for the theft that occurred.[2]

After reviewing this footage, Ms. Lamb reported her findings to Mr. Phillips. Dkt. No. 44 at 3. Mr. Phillips told Ms. Lamb to call the Regional Security Manager, Michael Reese, and apprise him of the status of her investigation. Id. at 4. When prompted by Mr. Reese, Ms. Lamb told him that she was not

---

[2] The Court has been provided with the DVR footage which documents the Plaintiff's movements at the CSM podium shortly before her shift ended on August 12, 2007. Dkt. No. 28. In addition, the Court reviewed this video in the presence of opposing counsel at the oral argument held on July 11, 2012. The parties offer vastly different contentions as to what the footage does, or does not, show. The footage is taken from a considerable distance and the Plaintiff's back largely obstructs a clear view of what her hands are doing. However, the footage does show the Plaintiff shortly before her shift ends: (1) alone at the CSM podium; (2) facing the CSM podium and bending over in the vicinity of where the drawers were located; (3) straightening herself upright; (4) turning toward the carousel behind her (register eighteen), where she had earlier placed a stack of broken-down register boxes; (5) retrieving the stack of boxes and then turning and moving them back to the top of the CSM podium; and (6) lifting the entire stack of broken-down boxes off of the CSM podium and walking away towards the back of the store where the baler was located. Dkt. No. 28.

AO 72A
(Rev. 8/82)

100% sure as to her findings. Id. In response, Mr. Reese told Ms. Lamb to allow the police to handle the situation going forward. Id.

Shortly thereafter, Ms. Lamb called Detective Antonio Ward who had been previously assigned to the case. Id. She explained to Detective Ward what she believed the DVR footage of the CSM podium revealed, and expressed her conclusions. Detective Ward asked if Wal-Mart had located the missing loan bag, to which Ms. Lamb responded that it had not. Dkt. No. 30, Att. No. 3, Lamb Dep. at 122-131. After this interchange, Detective Ward instructed Ms. Lamb and Ms. Spivey to make written statements as to what they had observed on the video and to make a copy of the DVR for his viewing. Id. at 131.

Following Ms. Lamb's discussion with Detective Ward, Ms. Lamb and Ms. Spivey proceeded to search for the loan bag. Id. at 133-144. In doing so, the two continued to review DVR footage in an attempt to identify the bale which came out of the baler after Plaintiff's shift ended on August 12, 2007. Ms. Lamb and Ms. Spivey allege that they reviewed footage from a camera located in the general merchandise receiving area from which they were able to observe a distinctive colored box in the bale on the afternoon of August 12, 2007.[3] Dkt. No. 30 at 6. The two

---

[3] This footage was subsequently re-recorded over by Wal-Mart, and thus, is no longer available. It is also the subject of Plaintiff's Motion for Sanctions discussed below.

also testified that they went to the baler where they were able to identify the specific bale (with the distinctively colored box) and began to search its contents. As the two sorted through the boxes in this bale, they found the unaccounted for loan bag, empty, amongst broken-down register bag boxes. Dkt. No. 30, Att. No. 3, Lamb Dep. at 144-149; Dkt. No. 30, Att. No. 4, Spivey Dep. at 110-131. After this development, Mr. Phillips called Detective Ward to inform him that the empty loan bag had been found. Dkt. No. 30, Att. No. 3, Lamb Dep. at 154.

At some point in time, Detective Ward met with Ms. Lamb and reviewed the DVR recording of Plaintiff at the CSM podium. Dkt. No. 30, Att. No. 5, Ward Dep. at 74-75. During this viewing, Ms. Lamb described her impression as to what she thought the DVR demonstrated. Id. Ms. Lamb also told Detective Ward about the circumstances under which the empty loan bag had been found. Id. Detective Ward, thereafter, obtained a warrant from the Coffee County Magistrate Court for the Plaintiff's arrest. Id. at 48. Subsequently, the Plaintiff's case was taken before the grand jury by District Attorney John Rumker, and an indictment was issued.[4] Dkt. No. 30, Att. No. 6, Rumker Dep. at 12. The criminal case against the Plaintiff, however, was eventually dismissed after D.A. Rumker concluded that he would not be able

---

[4] Notably, Detective Ward was the only witness who testified before the grand jury. No one from Wal-Mart appeared. Dkt. No. 30, Att. No. 6, Rumker Dep. at 12.

AO 72A
(Rev. 8/82)

to successfully prosecute the case, and the Plaintiff passed a
polygraph test. Id. at 15.

## MOTION FOR SANCTIONS

Plaintiff filed a Motion for Sanctions due to alleged
spoliation of evidence. Dkt. No. 20.  Plaintiff submits that the
Defendants' destruction of video surveillance located in the
general merchandise area, which was allegedly used to identify
the first bale of boxes taken out of the store following
Plaintiff's shift, amounts to spoliation.  This motion was
referred to the Magistrate Judge, and by Order on March 30,
2012, Magistrate Judge James E. Graham denied the Plaintiff's
Motion. Dkt. No. 33.  The Plaintiff has objected to this Order.
Dkt. No. 37.  After carefully considering the parties'
respective briefs, and holding oral argument on the matter, the
Court concurs with the Magistrate Judge and finds that sanctions
are not in order.

The video that is the subject of the current motion for
sanctions is film that shows the transport of large bales from
the store to the parking lot.  It was used by the Defendants to
locate the bale which was moved to the Wal-Mart parking lot
after Plaintiff's shift ended on August 12, 2007.  The parking
lot at Wal-Mart contained four rows of bales, all of which
contained numerous large bales of compressed and bundled

AO 72A
(Rev. 8/82)

cardboard. Searching through each one of these large bales would have been a considerable task. Thus, the utility of this footage was to give the Wal-Mart representatives a location to start their search for the missing loan bag as opposed to randomly selecting which bale to search first. Ultimately, this video was re-recorded over by Wal-Mart in the course of its routine recording practice. Dkt. No. 23 at 10. To be clear, the missing footage would not show the Plaintiff (or anyone else) place items in the baler. Indeed, there was never footage documenting the Plaintiff's activities at the baler as that is one of the few areas of Wal-Mart not covered by cameras. Rather, the video at issue covers the transport of bales out of Wal-Mart to the parking lot.

Spoliation is the "destruction or significant alteration of evidence, or the failure to preserve property for another's use in pending or reasonably foreseeable litigation." Graff v. Baja Marine Corp., 310 F. App'x 298, 301 (11th Cir. 2009) (internal quotations and citations omitted). Federal courts have broad discretion to impose spoliation sanctions against litigants as part of their inherent power to manage their own affairs. In re Delta/AirTran Baggage Fee Antitrust Lit., 770 F. Supp. 2d 1299, 1305 (N.D. Ga. 2011). Federal law in this circuit does not set forth specific guidelines in determining whether sanctions for spoliation are appropriate. Flury v. Diamler Chrysler Corp., 427

9

F.3d 939, 944 (11th Cir. 2005). Consequently, the Court will examine Georgia law in determining whether sanctions for spoliation are warranted. Id.

Georgia law in this context provides that the deciding court must consider: "(1) whether the party seeking sanctions was prejudiced as a result of the destruction of the evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the party who destroyed the evidence acted in good or bad faith; and (5) the potential for abuse if expert testimony was not excluded." AMLI Residential Prop. Inc. v. Ga. Power Co., 667 S.E.2d 150, 154 (Ga. Ct. App. 2008). A finding of bad faith can be based on "direct evidence or on circumstantial evidence where certain factors converge." Thornton v. Blitz U.S.A., Inc., 2011 WL 7693023, at *1 (S.D. Ga. Mar. 24, 2011) (citing Atl. Sea Co. v. Anais Worldwide Shipping, Inc., 2010 WL 2346665, at *1 (S.D. Fla. June 9, 2010)).

The Magistrate Judge ultimately concluded that four of these factors militated against assessing sanctions, and the remaining factor was not applicable. Dkt. No. 33 at 4-7. This Court agrees with the Magistrate Judge's conclusion. In analyzing the pertinent factors, sanctions are clearly not in order.

AO 72A
(Rev. 8/82)

First, the practical importance of the re-recorded video footage is non-existent. Pressed into articulating what it could possibly show that would have made a difference, Plaintiff's counsel could not name anything. Neither can the Court. Plaintiff essentially argues that because it cannot be produced it must be exculpatory. Moreover, summary judgment would still be in order, necessary truly, even if the testimony about the original baling film were excluded. Stated differently, Plaintiff's claims for false arrest and malicious prosecution fail for multiple reasons with or without the destroyed evidence. Plaintiff wants to characterize the film that was overwritten as a "smoking gun." Dkt. No. 37 at 3. The two problems with such a characterization are that it isn't a gun, and it doesn't smoke. The only significance of the footage is that it helped the Defendants narrow their search for the empty loan bag. The parking lot at Wal-Mart contained four rows of large bales of cardboard. Without this footage the Defendants would have been forced to begin cutting into bales without knowing which bale was placed in the parking lot after the Plaintiff's shift.

Second, the Plaintiff is in no way prejudiced by the absence of this footage. Again, when pressed on this point at oral argument Plaintiff's counsel was unable to even hypothesize what this video could have shown which would be exculpatory to

11

the Plaintiff or otherwise state how the absence of this video serves to prejudice the Plaintiff.

Finally, Plaintiff has submitted no evidence to the Court – direct or circumstantial – that bespeaks bad faith on behalf of the Defendants in destroying this footage. Plaintiff's sole argument regarding bad faith is that her former criminal attorney (in the prior criminal case in which she was a defendant accused of theft) originally sought the video in question. Plaintiff argues that her former attorney asked for production of the video which is no longer available. She further argues that Plaintiff's non-compliance in this regard is evidence of bad faith.

The original subpoena for production of documents filed in Plaintiff's criminal case asked for "all store surveillance tapes taken at all locations within your store . . . on August 11, 2007 and August 12, 2007 . . . to be used as evidence by the Defendant." Dkt. No. 23-1 at 106-07. One of two fatal problems for the Plaintiff is that roughly one week later, the criminal defense attorney amended the subpoena for production of documents by altering the original request and seeking surveillance tapes from August 12, 2007, only from specific locations within the store. Id. at 109. The video at issue (of the general merchandise receiving area) was not requested by the amended subpoena. Id. The criminal defense attorney filed a

AO 72A
(Rev. 8/82)

broad Motion to Preserve Evidence in the criminal case, but the Court is unaware of whether the Motion was granted. Furthermore, the Motion to Preserve Evidence filed by Plaintiff's former criminal defense attorney cannot be read to cover the video at issue either. Id. at 106. Simply mentioning the word "tapes" without any other description or direction was insufficient to cover the specific video at issue. Therefore, Plaintiff's argument that the Defendants failed to comply with her prior attorney's requests is baseless. Despite Plaintiff's tenuous argument in this regard, there is simply no evidence that the destruction of this video in the regular course of business was done in bad faith. Thus, none of the factors analyzed under Georgia law favor assessing sanctions.

Secondly, "[t]o meet the standard for proving spoliation, the injured party must show that the alleged tortfeasor was put on notice that the party was contemplating litigation." Craig v. Bailey Bros. Realty, 697 S.E.2d 888, 891 (Ga. Ct. App. 2010). The Defendants in this matter were not on notice that the Plaintiff was contemplating civil litigation when this evidence was destroyed.[5] Indeed, the Defendants were not notified of

---

[5] This conclusion is strengthened when this case is compared to the authority cited in Plaintiff's Objection. Plaintiff cites Wal-Mart Stores, Inc. v. Lee, 659 S.E.2d 905 (Ga. Ct. App. 2008) in support of her position. However, Lee is markedly different than the case sub judice, as in that case Wal-Mart was sent a letter in an attempt to settle the case and avoid "costly litigation" prior to the time that the video evidence was destroyed. Id. at 909. In contrast, the Defendants in this action were first notified of contemplated

Plaintiff's intention to bring suit until nearly eight months after this video surveillance was recorded over in the regular course of business.[6] Dkt. No. 23 at 13. At the time this video was destroyed the only pending or contemplated litigation was the criminal prosecution against the Plaintiff. Plaintiff provides no authority which dictates that being the victim of criminal theft put the Defendants on notice that they might someday be a defendant in a civil suit.

Accordingly, Plaintiff's Objection is **OVERRULED**, (Dkt. No. 37), and the Magistrate Court's Order is **AFFIRMED**. Dkt. No. 33.

## MOTION FOR SUMMARY JUDGMENT

### 1. Legal Standard

The Federal Rules of Civil Procedure provide that a party may move for summary judgment through identifying each claim or defense on which summary judgment is sought. Fed. R. Civ. P. 56(a). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Investor Grp. v. FindWhat.com, 658

---

litigation nearly eight months after the video was destroyed. Dkt. No. 23 at 13; Dkt. No. 23, Ex. K.

[6] The DVR footage of the general merchandising area was recorded on August 12, 2007. Since this footage was not saved within approximately sixty (60) days, it would have been recorded over as a matter of normal store procedure. Dkt. No. 23 at 10. Wal-Mart was first notified by the Plaintiff about potential civil litigation on June 16, 2008. Dkt. No. 25, Ex. K.

AO 72A
(Rev. 8/82)

F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute over such a fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court there is an absence of evidence to support the non-moving party's case. Id. at 325. If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact or that the moving party is not entitled to judgment as a matter of law. Id. at 324. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

AO 72A
(Rev. 8/82)

## 2. Discussion

### A. False Arrest/Malicious Prosecution

Plaintiff's claims for false arrest and malicious prosecution fail for at least three reasons: (1) there is no evidence of malice on behalf of the Defendants; (2) Plaintiff is unable to show that the Defendants lacked probable cause; and (3) Plaintiff's arrest and subsequent indictment was the result of the independent actions of law enforcement. Consequently, Defendants' motion for summary judgment is granted as to these two claims.

#### a. Malice and Probable Cause

Malice and a lack of probable cause are necessary elements for both false arrest and malicious prosecution under Georgia law.[7] Compare O.C.G.A. § 51-7-1, with O.C.G.A. § 51-7-40. Since these are the only disputed elements in this case, the Court will analyze the Plaintiff's false arrest and malicious prosecution claims simultaneously.

From the outset, the Court notes that neither false arrest nor malicious prosecution are favored under Georgia law, as it

---

[7] Under Georgia law, to state a claim for malicious prosecution a plaintiff must show "(1) prosecution for a criminal offense; (2) instigated without probable cause; (3) with malice; (4) under a valid warrant, accusation or summons; (5) which has terminated favorably to the plaintiff; and (6) has caused damage to the plaintiff." Barnette v. Coastal Hematology & Oncology, P.C., 670 S.E.2d 217, 220 (Ga. Ct. App. 2008). Likewise, to state a claim for false arrest a plaintiff must show "(1) an arrest under the process of law; (2) without probable cause; and (3) made maliciously." Desmond v. Troncalli Mitsubishi, 532 S.E.2d 463, 467 (Ga. Ct. App. 2000).

AO 72A
(Rev. 8/82)

is public policy to encourage citizens to bring to justice those who appear guilty. Desmond, 532 S.E.2d at 466-67. Thus, the Plaintiff has a particularly heavy burden in this case due to the "countervailing public interest [of] encouraging the citizen to discharge his duty to society to vindicate violations of the law." K Mart Corp. v. Griffin, 375 S.E.2d 257, 258 (Ga. Ct. App. 1988). In light of this distrust, the existence of probable cause "usually is taken out of the hands of the jury, and held to be a matter of decision by the courts." Zohoury v. Home Depot, 521 S.E.2d 389, 391 (Ga. Ct. App. 1999) (internal quotations and citations omitted); see also McKissick v. S.O.A., Inc., 684 S.E.2d 24, 27 (Ga. Ct. App. 2009) ("The question of probable cause is a mixed question of law and fact. Whether the circumstances alleged to show probable cause existed is a matter of fact, to be determined by the jury, but whether they amount to probable cause is a question of law for the court.").

In this case, Plaintiff has not provided the Court with any evidence that the Defendants (or more precisely Ms. Lamb or Ms. Spivey) held any sort of ill-will or personal grievance toward her. When questioned on this point at oral argument, Plaintiff's counsel acknowledged that there was no evidence of personal ill-will or actual malice toward the Plaintiff on the part of Wal-Mart. Plaintiff's arguments contained in her brief to the contrary are largely based on her contention that Ms.

17

Lamb and Ms. Spivey overstated what the DVR footage of the CSM podium purported to show the Plaintiff do. Notably, Ms. Lamb and Ms. Spivey largely qualified their opinions as to what the DVR footage showed in stating that it "appeared" that the Plaintiff accessed the drawer and took something out. See, e.g., Dkt. No. 43 Ex. C, Lamb Statement (stating that it "appears that Ms. McLeod opens the second podium drawer and is searching through the contents . . . then [she] appears to place something on top of the podium"); Dkt. No. 43 Ex. D, Spivey Statement (stating that "Ms. McLeod appeared to be rummaging through the drawer and it appeared to me she may have pulled something out of the drawer.").

Despite Plaintiff's challenges in this regard, there is simply nothing in the record before the court which tends to show personal spite or a "general disregard of the right consideration of mankind, directed by chance against" the Plaintiff. Desmond, 532 S.E.2d at 467. This is all the more clear given the undisputed fact that Ms. Lamb and Ms. Spivey handed the police the actual video, allowing him the opportunity to draw his own independent conclusion.

Absent any actual malice, the Plaintiff must proceed under the theory that malice is to be inferred due to a total lack of probable cause. See K Mart Corp. v. Griffin, 375 S.E.2d at 258 (noting that "[m]alice may be inferred from a *total* lack of

AO 72A
(Rev. 8/82)

probable cause.") (emphasis in original). Hence, Plaintiff's claims for false arrest and malicious prosecution necessarily hinge on whether Plaintiff can show a total lack of probable cause. Id. Importantly, in instances such as this, where there is no evidence of malice other than such inference as may be drawn from proof of want of probable cause, and "that proof shows some circumstances pointing to the guilt of the accused, although insufficient to exclude every other reasonable hypothesis, the essential ingredient of malice is not so established as to entitle the plaintiff in an action for malicious prosecution (or malicious arrest) to recover." White v. Atlanta Hous. Auth., 423 S.E.2d 40, 41 (Ga. Ct. App. 1992) (internal citations and quotations omitted). As is discussed below, Plaintiff is unable to sustain her burden and show a total lack of probable cause, and therefore, no inference of malice is warranted. Further, at the very least, the evidence in this case "shows some circumstances pointing to the guilt of the [Plaintiff]," even if it is insufficient to exclude every other reasonable hypothesis. Id. Thus, Plaintiff has not sustained her burden in showing malice.

In determining whether probable cause existed, the question is, not whether the plaintiff was guilty, but whether defendants had reasonable cause to so believe. Gibbs v. Loomis, Fargo, & Co., 576 S.E.2d 589, 592 (Ga. Ct. App. 2003). Stated

differently, this inquiry focuses on whether "the circumstances were such as to create in the mind of defendants a reasonable belief that there was probable cause for the arrest and prosecution." Id. (internal citations and quotations omitted). In this context, probable cause is defined as the existence of such facts and circumstances as would excite the belief in a reasonable mind, that the person charged was guilty of the crime for which she was arrested. Id.

Here, Plaintiff was indicted by a grand jury pursuant to a warrant issued by the Coffee County State Magistrate Court. Consequently, it is Plaintiff's burden to show that probable cause did not exist. See Thompson v. Howard Bros., 657 S.E.2d 4, 5 (Ga. Ct. App. 2008) (noting that "[a]lthough evidence of an indictment is not conclusive, it is prima facie evidence of probable cause which shifts the burden to the plaintiff to come forward with specific facts tending to show that probable cause did not exist for his arrest and that the charges against him were instead motivated by malice.").

In turning to the undisputed facts on the record, it is apparent that the Plaintiff cannot demonstrate a lack of probable cause because the Defendants had legitimate reasons to report the Plaintiff as a suspect to the police. Much of this evidence comes in the form of DVR footage of the CSM podium utilized by the Defendants in investigating the theft of the

loan bag. The Plaintiff provides vigorous argument as to what inferences are to be drawn from this footage, but it is undisputed that the footage shows the Plaintiff: (1) stand alone at the site where the loan bag was stolen from - the CSM podium; (2) bend over at the CSM podium in the vicinity of where the loan bag was located; (3) straighten herself upright; (4) turn toward the carousel behind her, where she had earlier placed a stack of broken-down register boxes; (5) retrieve the stack of boxes and then turn and move them back to the top of the CSM podium; and (6) lift the entire stack of register boxes off of the CSM podium and walk away. Dkt. No. 28. Subsequent footage follows the Plaintiff walk from the CSM podium to the back of the Wal-Mart where Plaintiff admits that she placed broken-down boxes in the baler. There are no cameras which would cover what she or anyone else did at the baler.

True, the video showing the subsequent baling stack transport is not available. However, as discussed previously, no one, including Plaintiff, has articulated any use for the missing video aside from narrowing down which stack of baled cardboard to break open first to find the empty loan bag.

Ms. Lamb and Ms. Spivey felt that McLeod's behavior was suspicious and consistent with someone removing the loan bag from the drawer, placing it inside the stack of broken-down register bag boxes, and taking them to the area near the baler.

AO 72A
(Rev. 8/82)

Dkt. No. 30 at 18. Their belief was buttressed when an empty loan bag was later discovered amongst broken-down register bag boxes. Dkt. No. 30, Att. No. 3, Lamb Dep. at 144-149; Dkt. No. 30, Att. No. 4, Spivey Dep. at 110-131. In the several hours of footage reviewed by Ms. Lamb and Ms. Spivey, it appeared to them that only two individuals potentially accessed the second drawer on the CSM podium on the day that the loan bag went missing. Dkt. No. 30, Att. No. 3, Lamb Dep. at 77-79. Of these two individuals, Plaintiff was the only one observed carrying broken-down register boxes to the rear of the store. Due to these circumstances, the Defendants contacted the police to report the Plaintiff as a suspect in the theft. It is apparent from this evidence that "the facts as they appeared at the time of instituting the prosecution were such as to lead a person of ordinary caution to entertain a belief that the accused was guilty of the offense charged."[8] Wal-Mart Stores, Inc. v. Blackford, 449 S.E.2d 293, 295 (Ga. Ct. App. 1994).

Georgia case law supports this conclusion. In Gibbs v. Loomis, Fargo, & Co., 576 S.E.2d 589 (Ga. Ct. App. 2003), the plaintiff, who worked as a Loomis Fargo "messenger" and transported deposits from the Loomis Fargo consolidation facility to various banks, was accused of theft. Id. at 590.

---

[8] Or, at the very least, these circumstances show "some circumstances pointing to the guilt of the [Plaintiff]," negating Plaintiff's ability to create an inference of malice on behalf of the Defendants. White, 423 S.E.2d at 41.

Gibbs was arrested and indicted for the theft, but the case was later placed in the dead docket. Id. at 592. Subsequently, Gibbs sued his employer for malicious prosecution arguing that it had lacked probable cause in initiating his arrest. The Georgia Court of Appeals ultimately affirmed the trial court's grant of summary judgment because it found that the defendants had probable cause to believe that Gibbs was guilty of the theft.

The court pointed out that the employer had spent three hours reviewing security camera footage in an attempt to track the missing money. Id. at 592. Based on this review, the defendant became convinced that there was indeed an unaccounted for bag of money. Id. The footage did not clearly show who had taken the money, but the defendant was able to determine from the evidence that no one removed the bag of money before Gibbs entered. Id. The security camera did not conclusively show Gibbs exit the room with the stolen money, however, the defendants did conclude that after Gibbs left the room the money was no longer there. Id. Based on this investigation, it appeared to the defendant that Gibbs had taken the bag of money, and, as such, the police were informed of the investigation. Id. The court determined that the facts discussed above would lead a person of ordinary caution to entertain belief that Gibbs was guilty of the theft. Id. at 592-93.

AO 72A
(Rev. 8/82)

Likewise, in the present case, it is undisputed that Wal-Mart was the victim of a theft.[9] Also similar to Gibbs, Ms. Lamb and Ms. Spivey spent hours reviewing the video footage of the day that the loan bag was taken in an effort to determine its whereabouts. Plaintiff, similar to the plaintiff in Gibbs, was one of the limited number of people who had access to the site where the money was taken from on the day in question. In fact, Plaintiff was one of two people who Ms. Lamb and Ms. Spivey concluded had access to the second drawer of the CSM podium where the money had been. Of these two individuals, Plaintiff was the only individual documented leaving the area with broken-down register boxes. The empty loan bag was ultimately found amongst broken-down register boxes. While the video footage is not clear enough to conclusively show Plaintiff accessing the drawer and take the loan bag, neither was the footage in Gibbs. However, just like in Gibbs, the investigation conducted by the Defendants in this case was certainly enough to lead a person of ordinary caution to entertain a belief that the Plaintiff had committed the theft.

Further, much like the Plaintiff argues in the case *sub judice*, Gibbs also argued that the evidence utilized by the employer did not amount to probable cause because the security

---

[9] Plaintiff's counsel acknowledged at oral argument that Plaintiff did not contest that Wal-Mart was a victim of theft.

camera evidence could not establish whether the missing money was ever in the holding room, the camera did not cover the entire room, and the photographs did not clearly show how many bags of money Gibbs exited the room with. Id. at 593. The court in Gibbs was not persuaded by such arguments because they were "primarily concern[ed] whether Gibbs was, in fact, guilty of theft-an irrelevant issue." Id. Likewise, Plaintiff's alternate explanations of the DVR footage are not dispositive to the matter at hand.

Plaintiff's counsel makes good arguments for why a jury should not find McLeod guilty of theft beyond a reasonable doubt. However, the undisputed facts show probable cause and a lack of malice. Plaintiff simply misses the mark in this regard. Here, the inquiry does not focus on whether Plaintiff was guilty of the theft, but rather whether the Defendants were reasonable to be believe she was a suspect. Smith v. Trust Co. Bank, 450 S.E.2d 866, 869 (Ga. Ct. App. 1994).

   b. Independent Investigation

In addition to Plaintiff's inability to establish the necessary elements for her claims of false arrest and malicious prosecution, the Defendants are entitled to summary judgment because the decision to arrest the Plaintiff was made independently by Detective Ward. Under Georgia law, a defendant may successfully defend against a claim of malicious prosecution

AO 72A
(Rev. 8/82)

or false arrest when the arresting officer provides an uncontroverted testimony "that the decision to arrest plaintiff was made solely by him in the exercise of his professional judgment and independently of any exhortations by the defendants."[10] Barnette, 670 S.E.2d at 221 (citations omitted). This was precisely what happened in this case.

As to whether Detective Ward felt persuasion to make an arrest from Ms. Lamb and Ms. Spivey, Detective Ward testified at his deposition that:

> [t]here wasn't no persuasion from either side, either or, to make an arrest, because if I didn't have enough evidence, I wouldn't have made an arrest. I don't have a problem with not making an arrest.

Dkt. No. 30, Att. No. 5, Ward Dep. at 91. Similarly, when confronted with the contention that he certainly "relied upon the statements that were provided to [him] by Selma Lamb and Laura Spivey" Detective Ward responded that he "went with the DVR that I saw and after them finding the bag where it was found." Id. at 92. When pressed further by Plaintiff's counsel and asked whether he "relied on the accuracy of the statements that were given to [him] by Laura Spivey and Selma Lamb . . . in making the arrest determination?" Detective Ward responded:

> I don't know how you figure that. I mean, they did make statements and they did go over the DVR, but that

---

[10] This defense is also available for false arrest. See, e.g., Jacobs v. Shaw, 465 S.E.2d 460, 462 (Ga. Ct. App. 1995) overruled in part on other grounds by Infinite Energy, Inc. v. Pardue, 713 S.E.2d 456 (Ga. Ct. App. 2011).

ain't got nothing to do with it. I mean, the money
bag was found in the bale your client had, and once
they found the bag, I was secure and confident that it
was her that did it, and that's what my decision was
based on.

Id.

In response to Detective Ward's testimony Plaintiff
speculates that perhaps Detective Ward did not conduct an
independent investigation. Dkt. No. 43 at 16. The thrust of this
argument is that Detective Ward only viewed the portion of the
surveillance documenting the Plaintiff's activities,[11] Ms. Lamb
and Ms. Spivey narrated the portion that he did watch, and the
only interview that he conducted was of Steve Phillips. Id.
These arguments simply do not negate the disinterested and
unequivocal testimony of Detective Ward that he was not urged to
make an arrest one way or the other, and that he based his
decision to arrest on what he viewed on the DVR footage and the
ultimate location and circumstances of where the loan bag was
found. To the extent that Ms. Lamb and Ms. Spivey
misrepresented the contents of the DVR footage, such actions are
of no import as the undisputed facts show that Detective Ward

---

[11] Conversely, Plaintiff also presents the puzzling speculation that a jury
could conclude that Detective Ward never viewed the video surveillance at
all, despite his disinterested sworn testimony to the contrary. Dkt. No. 43
at 17. Aside from the inconsistent nature of Plaintiff's argument in this
regard, the Court can simply not draw this inference in favor of the
Plaintiff as it is not supported by the record. See Garczynski, 573 F.3d at
1165 (noting that at the summary judgment stage the court must determine the
relevant set of facts "and draw all inferences in favor of the opposing party
'to the extent supportable by the record.'" quoting Scott v. Harris, 550 U.S.
372, 381 n.8 (2007)).

personally viewed the footage himself and denies that he was persuaded by such statements.

The Georgia Court of Appeals has denied the defense asserted by the Defendants on occasions where the officer did not conduct an independent investigation, but rather merely relied on the facts urged by the defendant as to what they had observed. See, e.g., Corp. Prop. Inv. v. Milon, 549 S.E.2d 157, 161 (Ga. Ct. App. 2001) (finding that this defense was inapplicable because "Officer Locke acted solely on the facts urged by another without any independent investigation to corroborate such allegations"). In contrast to such authority, the facts here indicate that Detective Ward did not rely solely (or otherwise) on the statements of others in making his decision to effectuate the arrest. Rather, he "went with the DVR that I saw" and "them finding the bag where it was found" in deciding to effectuate the arrest of the Plaintiff. Dkt. No. 30, Att. No. 5, Ward Dep. at 92; see also id. at 49 (noting that he felt he had enough evidence to arrest Plaintiff for the theft "[f]rom what I viewed on the video and after they discovered the bag in some bales.").

Here, Detective Ward's testimony provides uncontroverted evidence that the decision to arrest Plaintiff was made solely by him in the exercise of his professional judgment and independently of any exhortations by the Defendants.

28

Plaintiff's counsel did all he could to try to get the Detective to back away from his sworn testimony by asking him three times, twice leading, whether the investigation was independent. The Detective never wavered. Thus, Defendants are entitled to summary judgment as to Plaintiff's claims for false arrest and malicious prosecution for this additional reason. See McLeod v. Pruco Life Ins. Co., 449 S.E.2d 895, 897 (Ga. Ct. App. 1994) *overruled in part on other grounds by* Ferrell v. Mikula, 672 S.E.2d 7 (Ga. Ct. App. 2008) (holding that "any factual issue generated by evidence that [the defendant's agent] indirectly urged Detective English to give plaintiff a subpoena or else take him to jail is rendered immaterial by Detective English's uncontradicted testimony that the decision to arrest plaintiff was made solely by him in the exercise of his professional judgment, and independently of any exhortations by defendants' agents."); Jacobs, 465 S.E.2d at 462 (affirming the trial court's grant of summary judgment for false arrest and malicious prosecution where officer's testimony provided that "[e]ven if [the officer] relied on Shaw's statement as a factor in determining to swear out the warrant against Jacobs, the officer's affidavit makes clear that the basis for swearing out the warrant also included his on-scene investigation, the review of the report from the state regulatory agency noting the pump

AO 72A
(Rev. 8/82)

worked properly, his telephone conversation with Jacobs, and his experience as a police officer.").

B. <u>Intentional Infliction of Emotional Distress</u>

Finally, Defendants have moved for summary judgment as to Plaintiff's claim for intentional infliction of emotional distress. In order to succeed on this theory in Georgia a plaintiff must establish (1) intentional or reckless conduct; (2) extreme and outrageous conduct; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress. <u>Phinazee v. Interstate Nationalease, Inc.</u>, 514 S.E.2d 843, 844-45 (Ga. Ct. App. 1999). The Defendants contend that its conduct as it related to the Plaintiff was neither extreme nor outrageous as a matter of law. The Court agrees and finds that the Defendants' conduct in investigating the Plaintiff for theft and reporting the findings to law enforcement was neither extreme nor outrageous as a matter of law.

Liability for intentional infliction of emotional distress "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Biven v. Software, Inc. v. Newman</u>, 473 S.E.2d 527, 529 (Ga. Ct. App.

1996) (internal citations and quotations omitted). Whether actions rise to the level of extreme and outrageous conduct necessary to support a claim of intentional infliction of emotional distress is generally a question of law. Id.

The Defendants' conduct does not even approach the requisite level of outrageousness required under Georgia law. See, e.g., Ferrell v. Mikula, 672 S.E.2d 7, 13 (Ga. Ct. App. 2008) (affirming grant of summary judgment on intentional infliction of emotional distress claim where restaurant incorrectly told police that patrons failed to pay for meal resulting in their detention); Palmer v. Stewart Cnty. Sch. Dist., 2005 WL 1676701, at *15-16 (M.D. Ga. June 17, 2005) (finding that an allegation that the defendant had wrongfully accused the plaintiff of theft, leading to her arrest, was not extreme or outrageous as a matter of law). Rather, the Defendants' employees merely investigated a theft of company property and reported their opinions to the police. Further, in Georgia it has long been established that being wrongfully accused of dishonesty in the workplace falls below the bar of what constitutes extreme and outrageous behavior. See, e.g., Abdul-Malik v. AirTran Airways, Inc., 678 S.E.2d 555, 560 (Ga. Ct. App. 2009). Consequently, the Defendants are entitled to summary judgment as to Plaintiff's intentional infliction of emotional distress claim as well.

AO 72A
(Rev. 8/82)

C. <u>Punitive Damages and Lost Wages</u>

As the Defendants are entitled to summary judgment on the merits of all of the Plaintiff's substantive claims, the Plaintiff is not entitled to damages as to those claims.

**MOTION TO EXCLUDE**

Because the Court has granted the Defendants' Motion for Summary Judgment the Court has no occasion to address the Defendants' Objection to the Magistrate Judge's Order granting in part and denying in part the Defendants' Motion to Exclude the Plaintiff's Expert Witness. Accordingly, Defendants' Objection is **DISMISSED as MOOT**. Dkt. No. 53.

**CONCLUSION**

Based on the reasoning set forth above, the Defendants' Motion for Summary Judgment is **GRANTED**, (Dkt. No. 30), the Plaintiff's Objection to the Magistrate Judge's Order denying sanctions is **OVERRULED**, (Dkt. No. 37), and the Defendant's Objection to the Magistrate Judge's Order granting in part and denying in part the Defendants' Motion to Exclude Plaintiff's Expert Witness is **DISMISSED as MOOT**. Dkt. No. 53. The Clerk of court is instructed to dismiss the case and enter an order of final judgment.

AO 72A
(Rev. 8/82)

**SO ORDERED**, this 18th day of July, 2012.


LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)